UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JASON SANFORD,<br><br>           Plaintiff,<br>     v.<br><br>THOR INDUSTRIES, INC. and DS CORP., d/b/a CROSSROADS RV,<br><br>           Defendants. | Case No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

Plaintiff, Jason Sanford, by counsel, Delk McNally, LLP, for his Complaint for Damages against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV (collectively "Defendants"), hereby alleges and states as follows:

**Parties**

1.     At all times relevant to this litigation, Plaintiff, Jason Sanford ("Plaintiff"), is, and at all times relevant hereto, has been a resident and citizen of the State of Indiana.

2.     Defendant, Thor Industries, Inc., is an Indiana corporation which maintains its principal office and conducts business within the geographical boundaries of the Northern District of Indiana.  Thor Industries, Inc. is the sole owner of operating subsidiary entities, including but not limited to Defendant, DS Corp., d/b/a Crossroads RV.

3.     Defendant, DS Corp., d/b/a Crossroads RV, is an Indiana corporation which maintains its principal office and conducts business within the geographical boundaries of the Northern District of Indiana.  Crossroads RV is an assumed business name of DS Corp., which is a subsidiary owned by Defendant, Thor Industries, Inc.

**Jurisdiction and Venue**

4. Defendants are "covered entities" as defined by 42 U.S.C. § 12111(2).

5. Defendants are "employers" as defined by 42 U.S.C. § 12111(5).

6. Plaintiff is a "qualified individual" as that term is defined by 42 U.S.C. § 12111(8).

7. Plaintiff has a "disability" as that term is defined by 42 U.S.C. § 12102(1).

8. Plaintiff, at all relevant times to this action, was an "employee" as defined by 42 U.S.C. § 12111(4).

9. Plaintiff brings this case under the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), which forbids employers from retaliating or from taking adverse personnel action against employees who exercise their lawful and protected rights under Title VII.  This action is also brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, *et seq.*, including its anti-retaliation provision; and this statute contains the remedy for aggrieved employees who allege that they have a disability, a record of a disability or who have been perceived or "regarded as having such an impairment."  *See* 42 U.S.C. § 12102.

10. This Court's jurisdiction over this matter is based upon federal questions that arise from Plaintiff's cause of action.  28 U.S.C. § 1331.  Specifically, this matter arises from the deprivation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(b), and Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, *et seq.*, which prohibit employer discrimination and retaliation.  This Court is also authorized to exercise jurisdiction over Plaintiff's state law claims of *Frampton* wrongful discharge and

intentional and/or negligent infliction of emotional distress pursuant to its authority over supplemental claims under 28 U.S.C. Section 1367.

11.   Venue is properly placed in this district, pursuant to 28 U.S.C. Section 1391(b), because it is where all of the parties resided and where the events complained of occurred.

12.   All conditions precedent to jurisdiction have been satisfied.  On July 6, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 846-2015-11837 ("the Charge").  On January 14, 2016, the EEOC issued Plaintiff a Notice of Right to Sue ("Notice") based on the allegations in the Charge.  The instant action has been filed within ninety (90) days of Plaintiff's receipt of the Notice.

## Facts Common to All Counts

13.   In May 2013, Plaintiff commenced employment with Thor Industries, Inc. as an assembly worker at a DC Corp., d/b/a Crossroads RV facility located in LaGrange County, Indiana.

14.   Plaintiff could perform the essential functions, with and/or without reasonable accommodations, of all positions he was assigned upon the commencement of his employment with Defendants.

15.   On October 3, 2013, Plaintiff suffered a crush injury to his right wrist while working for Defendants at the DC Corp., d/b/a Crossroads RV facility located in LaGrange County, Indiana.

16.   On that same date (October 3, 2013), Plaintiff filed a worker's compensation occupational injury report and claim.

17. On October 4, 2013, Plaintiff attempted to work but was suffering too much pain to adequately perform his employment duties, thus he visited Defendants' company doctor who ordered him to undergo x-rays on his right wrist.

18. Plaintiff returned to work on October 7, 2013, and visited Defendants' company doctor again because he was still suffering from pain and swelling from the crush injury to his right wrist. Defendants' company doctor ordered Plaintiff not to return to work for ten (10) to fourteen (14) days.

19. On October 8, 2013, Plaintiff visited a wrist surgeon who recommended that he undergo physical therapy twice per week.

20. On October 30, 2013, Plaintiff underwent an MRI. The results from the MRI, which Plaintiff received on November 5, 2013, revealed that Plaintiff suffered fibrocartilage tears and required surgery to repair such tears.

21. On November 11, 2013, Plaintiff received a call from Penny Huston, an employee of Defendants' Human Resources Department, who directed Plaintiff to return to the DC Corp., d/b/a Crossroads RV facility located in LaGrange County, Indiana the following day after Plaintiff had missed work for over one month as a result of the right wrist injury that he suffered during the course of his employment with Defendants. Ms. Huston informed Plaintiff that Defendants had work that Plaintiff could perform one-handed.

22. On November 12, 2013, Plaintiff returned to work at the same DC Corp., d/b/a Crossroads RV facility located in LaGrange County, Indiana, and Defendants ordered him to clean bathrooms, which required him to perform work, including but not limited to the following tasks: mopping, emptying trash containers and washing toilets. However, one of Defendants' custodial employees informed Plaintiff that he was required to have a hepatitis shot in order to perform this

type of work and such employee informed Pat Brown, the manager of the DC Corp., d/b/a Crossroads RV facility located in LaGrange County, Indiana, that Plaintiff could not complete this work using only one hand.

23.     As such, Defendants' Human Resources Department assigned Plaintiff to perform demolition work at another office building on November 14, 2013.  On November 15, 2013, Plaintiff was required to haul twenty-five (25) feet long heat ducts into a storage room for other duct work and fell over some of the ducts, knocking approximately five (5) full-size doors onto his right arm, which was in a sling at the time.

24.     On November 20, 2013, Plaintiff underwent surgery to repair the fibrocartilage tears.

25.     On December 2, 2013, Defendants' Human Resources Department directed Plaintiff to return to work to perform office work that could supposedly be completed with one hand.  When Plaintiff informed Ms. Huston that the work required him to use two (2) hands but that he could not use two (2) hands pursuant to his doctor's orders, she responded by telling him to use both hands and that he would be terminated if he did not complete the work.

26.     From December 2, 2013 to December 20, 2013, Plaintiff left work two (2) times per week for physical therapy.

27.     On December 20, 2013, Mark Dillworth, head of Defendants' Human Resources Department, complimented Plaintiff on his office work but informed him that Defendants had no further work for him.

28.     Plaintiff began receiving physical therapy three (3) times per week on January 23, 2014, and on February 21, 2014, Dr. Schaum informed him that he was pushing physical therapy too hard and ordered him to undergo an EMG test.

29. Plaintiff underwent an EMG test on February 25, 2014, and an MRI on February 28, 2014. The MRI results revealed that Plaintiff suffered tearing of the central membranous portion of the triangular fibrocartilage complex and that less than half of the tears had been repaired during the November 20, 2013 surgery were now full thickness tears.

30. On March 27, 2014, Dr. Schaum ordered him to increase physical therapy to three (3) times per week, and Plaintiff was forced to drive to Elkhart, Indiana for such therapy.

31. On May 12, 2014, Plaintiff was examined by Dr. Baltera pursuant to Dr. Schaum's recommendation, and Dr. Schaum opined that Dr. Baltera's examination results indicated that Plaintiff needed additional surgery to repair the tears and cauterize the neuroma. As such, Plaintiff underwent surgery on June 27, 2014.

32. On July 10, 2014, Dr. Schaum positioned Plaintiff's right wrist and part of his right arm in a fiberglass cast, which he was ordered to wear for four (4) weeks.

33. Plaintiff began receiving physical therapy three (3) times per week again after his cast was removed on August 4, 2014.

34. On October 1, 2014, Plaintiff began a Work Rehab Therapy program to assist him with his recovery and enable him to return to work. As part of the Work Rehab Therapy program, his physical therapist completed a Regular Job Demand Profile for Plaintiff and placed him on a two (2) pound weight restriction when performing tasks as part of his work responsibilities.

35. On November 3, 2014, Plaintiff drove to Kokomo, Indiana to undergo an evaluation by Dr. Baltera pursuant to Dr. Schaum's recommendation, waited thirty-five (35) minutes to see Dr. Baltera, who received a call from Dr. Schaum shortly before Dr. Baltera began examining Plaintiff. Dr. Baltera returned to the room where Plaintiff was waiting for his evaluation after his

phone conversation with Dr. Schaum, and Dr. Baltera informed Plaintiff that there was nothing further that Dr. Baltera could do for Plaintiff.

36. On December 9, 2014, Plaintiff traveled to Defendants' office located in Topeka, Indiana to pick up his worker's compensation check and make his insurance payment. During this visit, Plaintiff requested that Ms. Huston provide him with FMLA forms as well as his short-term and long-term disability applications. Ms. Huston assured him that she would have the necessary paperwork ready for Plaintiff when he returned to make his next insurance payment.

37. On December 16, 2014, Plaintiff returned to Defendants' corporate office to obtain his worker's compensation check and paperwork. When he arrived, he discovered that Ms. Huston had left him an envelope with the enclosed paperwork; however, the envelope did not contain the FMLA forms that Plaintiff requested. Ms. Huston claimed that she would mail Plaintiff the FMLA forms, but she failed to do so.

38. When Plaintiff followed up with Ms. Huston on December 19, 2014, about the FMLA paperwork, Ms. Huston declined to give it to him and informed Plaintiff that he did not qualify for leave under the FMLA. Ms. Huston further notified Plaintiff that he would be covered under the "old disability insurance" as opposed to the disability insurance for which he had been paying.

39. On January 7, 2015, Ms. Huston called Plaintiff to inform him that she would be mailing his worker's compensation check to him along with a vacation check. After Plaintiff inquired about the FMLA and disability paperwork again, Ms. Huston responded by stating: "You won't need either one because you've been terminated." Ms. Huston further stated that Defendants' Human Resources Department had received Plaintiff's maximum medical

improvement ("MMI") from the company doctor and that Defendants did not have any positions available to accommodate Plaintiff's two (2) pound weight restriction.

40.    Plaintiff asked Ms. Huston and Mr. Dillworth if they had falsified documents and provided them to the company doctor, physical therapist and FCE evaluator so that the doctor would set Plaintiff's weight restriction at an amount of weight which Defendants allegedly could not accommodate, and the company doctor relied upon such information to complete Plaintiff's Regular Job Demand Profile.  Ms. Huston and Mr. Dillworth did not respond to Plaintiff's question, but Mr. Dillworth stated that Defendants did not have work for Plaintiff to complete while under such restriction although Defendants were able to find work for him during the week prior to his November 2013 surgery and for two (2) weeks following the surgery.

## COUNT I
**Violation of the Americans with Disabilities Act, as amended – Failure to Accommodate**

41.    Plaintiff incorporates by reference the allegations contained in rhetorical paragraphs 1 through 40 as if fully set forth herein.

42.    Plaintiff has a disability as defined by 42 U.S.C. §12102(1)(A), (B) or (C):  he has an impairment that substantially limits a major life activity; he has a record of such an impairment; and/or he was regarded and treated as if he had such an impairment.

43.    Plaintiff was capable of performing the essential functions of an assembly line worker position or another position, with reasonable accommodations.

44.    Plaintiff is a "qualified individual with a disability" as that term is defined under 42 U.S.C. § 12111(8) because he suffers from limitations in his right wrist, which impair his ability to work, as a result of the crush injury that Plaintiff suffered during the course of his employment with Defendants.

45.    Moreover, Defendants' Human Resources Department perceived or regarded

Plaintiff as having disabling conditions, personnel decisions were improperly made in accordance with this perception and Plaintiff was denied reasonable accommodations for his disability. As a result of Defendants' regarding Plaintiff as a person with a disability, Plaintiff was subjected to discrimination based on that disability and ultimately terminated.

46. Defendants failed to engage in the interactive process with Plaintiff.

47. Although Defendants reasonably accommodated Plaintiff's work restrictions one (1) week prior to and for two (2) weeks after the first surgical procedure on his right wrist, Defendants failed to reasonably accommodate Plaintiff thereafter and terminated him on January 7, 2015 without any justifiable basis and in violation of state and federal law.

48. Plaintiff was removed from his position, because he was a "qualified individual with a disability," possessed a "record of a disability" and management perceived him and/or regarded him as possessing a disability.

49. Defendants violated the ADA, as amended, 42 U.S.C. §12101 *et. seq.*, by dismissing Plaintiff from his position because he was a "qualified individual with a disability" and perceived by Defendants' management as having a disability.

50. Defendants' unlawful actions were willful, intentional and done with reckless disregard for Plaintiff's federally protected civil rights, and Plaintiff has suffered and continues to suffer harm as a result of Defendants' unlawful actions.

51. Defendants' above practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee of Defendants. Thus, Plaintiff is entitled to recover compensatory damages from Defendants for increased medical expenses, loss of income, future insurance coverage, other benefits of employment, employment advancement opportunities, future employment opportunities, emotional and physical pain, suffering and

distress.

52. Plaintiff has suffered and continues to suffer harm as a result of Defendants' unlawful actions.

53. As a result of Defendants' unlawful conduct, Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorneys' fees, costs and expenses.

WHEREFORE, Plaintiff, Jason Sanford, respectfully requests judgment in his favor and against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV, compensation for all damages resulting from Defendants' violations of the Americans with Disabilities Act, as amended, punitive damages, attorneys' fees and costs and all other just and proper relief.

## COUNT II
### Violation of the Americans with Disabilities Act, as amended – Discharge

54. Plaintiff incorporates by reference the allegations contained in rhetorical paragraphs 1 through 53 as if fully set forth herein.

55. The Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, *et seq.*, contains an anti-retaliation provision forbidding employers from retaliating or taking adverse personnel action against employees who exercise their lawful and protected rights under that Act.

56. Plaintiff had voiced his complaints to Defendants regarding the violations of his work restrictions and Defendants continued to violate those restrictions; Defendants then proceeded to take retaliatory personnel action against Plaintiff.

57. By expressing complaints, Plaintiff had a reasonable belief that Defendants had engaged in unlawful conduct in violation of the Americans with Disability Act, as amended, when Defendants failed to change applicable working conditions prior to his surgery in November 2013 and refused to provide Plaintiff with the proper FMLA forms and disability applications.

58. Plaintiff is a "qualified individual" as that term is defined under 42 U.S.C. §

12111(8).

59. Plaintiff has a disability as defined by 42 U.S.C. §12102(1)(A), (B) or (C): he has an impairment that substantially limits a major life activity; he has a record of such an impairment; and/or he was regarded and treated as if he had such an impairment.

60. Defendants terminated Plaintiff and subjected Plaintiff to less favorable terms, conditions and privileges of employment because of his disability.

61. Defendants' termination of Plaintiff constituted retaliatory conduct, and such conduct was knowingly and intentionally perpetrated by Defendants in violation of the anti-retaliation provision of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, *et seq*.

62. Defendants' unlawful actions were willful, intentional and done with reckless disregard for Plaintiff's federally protected civil rights.

63. Plaintiff has suffered and continues to suffer harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff, Jason Sanford, respectfully requests judgment in his favor and against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV, compensation for all damages resulting from Defendants' violations of the Americans with Disabilities Act, as amended, punitive damages, attorneys' fees and costs and all other just and proper relief.

## COUNT III
### Wrongful Termination – *Frampton v. Central Indiana Gas Co.*

64. Plaintiff incorporates by reference the allegations contained in rhetorical paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiff engaged in protected activity under the public policy outlined in *Frampton v. Central Indian Gas Co.*, 297 N.E.2d (Ind. 1973) through the filing of a worker's compensation claim when he received an on-the-job-injury.

66. Defendants retaliated against Plaintiff by falsifying documents to health care providers in an attempt to justify Defendants' company doctor's work restriction determination. Also, Defendants retaliated against Plaintiff by expressing violations of his work restrictions, failing to change working conditions, failing to provide Plaintiff reasonable accommodations, failing to provide Plaintiff with the FMLA forms and long-term and short-term disability applications as he requested and terminating him because of their regarding him as a qualified individual with a disability.

67. Defendants also retaliated against Plaintiff and wrongfully discharged Plaintiff for the filing of his worker's compensation claim and worker's compensation benefits.

68. Defendants' unlawful actions were willful, intentional and done with reckless disregard for Plaintiff's federally protected civil rights.

69. Plaintiff has suffered and continues to suffer harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff, Jason Sanford, respectfully requests judgment in his favor and against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV, compensation for all damages resulting from Defendants' wrongful termination of Plaintiff, punitive damages, attorneys' fees and costs and all other just and proper relief.

## COUNT IV
## Violation of Title VII – Retaliation

70. Plaintiff incorporates by reference the allegations contained in rhetorical paragraphs 1 through 68 as if fully set forth herein.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-3(a), contains an anti-retaliation provision forbidding employers from retaliating or from taking adverse personnel action against employees who exercise their lawful and protected rights under Title VII.

72. 42 U.S.C.A. Section 2000(e)-3(a) (1982) of Title VII of the Civil Rights Act of 1964, as amended, reads as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

73. Defendants retaliated against Plaintiff by falsifying documents to health care providers in an attempt to justify Defendants' company doctor's work restriction determination. Also, Defendants retaliated against Plaintiff by expressing violations of his work restrictions, failing to change working conditions, failing to provide Plaintiff reasonable accommodations, failing to provide Plaintiff with the FMLA forms and long-term and short-term disability applications as he requested and terminating him because of their regarding him as a qualified individual with a disability.

74. Plaintiff had a reasonable belief that Defendants' conduct constituted an unlawful employment practice and that voicing a complaint about such a practice invoked the protection of Section 2000(e)-3(a) (1982) of Title VII of the Civil Rights Act of 1964, as amended.

75. By expressing complaint, Plaintiff had a reasonable belief that Defendants had engaged in unlawful conduct in violation of the Americans with Disability Act and Title VII of the Civil Rights Act of 1964, as amended, when Defendants failed to change applicable working

conditions and refused to provide Plaintiff with the proper FMLA forms and disability applications.

76. The termination of Plaintiff from his position constituted retaliatory conduct, and such conduct was knowingly and intentionally perpetrated by Defendants in violation of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e-3(a) (1982).

77. Defendants' unlawful actions were willful, intentional and done with reckless disregard for Plaintiff's federally protected civil rights.

78. Plaintiff has suffered and continues to suffer harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff, Jason Sanford, respectfully requests judgment in his favor and against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV, compensation for all damages resulting from Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, punitive damages, attorneys' fees and costs and all other just and proper relief.

## COUNT V
### Intentional and/or Negligent Infliction of Emotional Distress

79. Plaintiff incorporates by reference the allegations contained in rhetorical paragraphs 1 through 77 as if fully set forth herein.

80. Defendants knew and intended, or should have known, that their actions would result in Plaintiff's severe mental and emotional distress. The acts and omissions of Defendants as described above constitute the intentional and/or negligent infliction of emotional distress as they were outrageous and extreme.

81. As a direct and proximate result of Defendants' acts or omissions, Plaintiff has suffered and continues to suffer harm in an amount to be determined at trial.

WHEREFORE, Plaintiff, Jason Sanford, respectfully requests judgment in his favor and against Defendants, Thor Industries, Inc. and DS Corp., d/b/a Crossroads RV, compensation for all damages resulting from Defendants' intentional and/or negligent infliction of emotional distress, punitive damages, attorneys' fees and costs and all other just and proper relief.

## JURY DEMAND

Plaintiff, Jason Sanford, by counsel, respectfully requests a trial by jury on all issues and causes of action asserted herein.

          Respectfully submitted,

          DELK McNALLY LLP


          /s/Jason R. Delk
          Jason R. Delk, Atty. No. 24853-18
          Daniel J. Gibson, Atty. No. 27113-18
          Arie J. Lipinski, Atty. No. 30739-64
          *Attorneys for Plaintiff*

DELK McNALLY LLP
421 S. Walnut
Suite 200
Muncie, IN 47305
Tel: (765) 896-9495
Fax: (888) 453-0545