# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JASON SANFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-128-TLS |
| | ) |
| THOR INDUSTRIES, INC., and DS CORP., | ) |
| d/b/a/ CROSSROADS RV, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 25] filed by Defendants Thor Industries, Inc., and DS Corp., d/b/a/ Crossroads RV ("the Defendants"). The Plaintiff, Jason Sanford, filed his Complaint [ECF No. 1] on April 13, 2016, asserting claims for failure to accommodate in violation of the Americans with Disabilities Act (ADA), wrongful termination, retaliation in violation of the ADA and Title VII, and intentional and/or negligent infliction of emotional distress.[1] The Plaintiff responded to the Defendants' Motion on December 20, 2017 [ECF No. 29], and the Defendants replied on January 3, 2018 [ECF No. 31]. This matter is now fully briefed and ripe for review.

## FACTUAL BACKGROUND

The Plaintiff began working for Crossroads, a recreational vehicle (RV) manufacturer, in May 2013. Initially, the Plaintiff assisted in assembling the floors of RV units, including

---

[1] The Plaintiff admits that the Defendants are entitled to summary judgment on his claims for intentional and/or negligent infliction of emotional distress. The Court, therefore, will not address these claims.

installing wiring, connecting tanks, laying carpeting, and installing linoleum. The Plaintiff later became a "midline reworker" and eventually a trimmer. As a trimmer, the Plaintiff primarily installed trim above and inside cabinets and around the door casing, which required the Plaintiff to hold the trim with one hand and install it with the other hand. The Plaintiff would have to carry a ladder between units, "nailers" for securing the trim, and bundles of trim.

On October 3, 2013, the Plaintiff was injured while installing trim around a door casing when another employee kicked open the door, smashing the Plaintiff's wrist. The Plaintiff filed a worker's compensation occupational injury report and claim the day of the injury. According to the Plaintiff, his supervisor forced him to work for the remainder of the day. The Plaintiff also claims that, upon returning to work the next day, his supervisor threatened to fire him if he went to the plant manager to seek medical attention.

The Plaintiff was treated at Parkview Total Health on October 4, 2013, where he received medical restrictions that did not allow any use of his right arm or hand. The Plaintiff visited a doctor on October 8, 2013, where his wrist was placed in a splint for two weeks. Eventually the Plaintiff scheduled surgery for his wrist on November 20, 2013.

Prior to his surgery, the Plaintiff returned to Crossroads where he was given light duty work such as cleaning bathrooms, picking up screws around the facility, and taking off electrical outlets, receptacles, and door casings; however, the Plaintiff insisted that he was unable to complete any of these duties due to his medical restrictions. While taking off receptacles and door casings, multiple wood doors fell on top of him, which, the Plaintiff asserts, further exacerbated his wrist injury.

On November 20, 2013, the Plaintiff underwent an arthroscopic debridement surgery on his wrist. He was not permitted to return to work until December 2, 2013, and he was not

permitted to use his right arm, hand, or wrist. At that time, the Plaintiff was given light duty office work, which involved preparing new-hire packets, putting stickers on those packets, and stuffing envelopes. According to the Plaintiff, when he expressed concern with his ability to perform this work, he was met with sarcastic comments and threats of termination. This work assignment lasted until December 20, 2013, which was the last day the Plaintiff performed any work for Crossroads and went on medical leave. Thereafter, the Plaintiff claims he was subjected to verbal abuse when he went to pick up his paychecks.

On February 20, 2014, the Plaintiff's physician determined that the Plaintiff was not progressing with therapy, his pain was increasing, and his functionality was decreasing. The Plaintiff underwent a second surgery on June 27, 2014, at which point he was told he could not return to work until July 7, 2014, and that it could be one to three years before he could return to work. As of October 1, 2014, the Plaintiff's physician still had not released him to return to work, and the physician's notes indicated that the Plaintiff's "right grip/grasp was nonfunctional and task could not be progressed." A Work Rehab Progress Report dated October 28, 2014, reflected the same.

Although there was communication between Crossroads and the Plaintiff regarding the status of his medical condition, there was no discussion about any potential accommodations that would allow the Plaintiff to return to work with his medical restrictions. On January 7, 2015, the medical case management firm overseeing the Plaintiff's medical leave issued a closure report stating that the Plaintiff's treating physician concluded that the Plaintiff had reached maximum medical improvement and assigned him permanent restrictions. The Plaintiff was terminated that same day.

## STANDARD OF REVIEW

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

### A.   Failure to Accommodate

The Plaintiff argues that Crossroads failed to accommodate his disability, in violation of the ADA. To state a claim for failure to accommodate under the ADA, "a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). The parties do not dispute that Crossroads was aware of the Plaintiff's disability. The parties do, however, dispute whether the Plaintiff is a qualified individual with a disability and, if he does so qualify, whether the Defendant reasonably accommodated his disability as required by the ADA.

*1.  Qualified Individual with a Disability*

It is well-established that the ADA protects only a qualified individual with a disability. *See Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001). "To determine whether someone is a 'qualified individual with a disability,' we apply a two-step test." *Id.* "First, we consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" *Id.* (quoting *Bombard v. Fort Wayne Newspaper, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996)). "If he does, then we must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Id.* (quoting *Bombard*, 92 F.3d at 563). The parties do not appear to dispute that the Plaintiff satisfied the prerequisites for the trimmer position. Rather, the dispute centers on whether the Plaintiff could perform the essential functions of the trimmer position.

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "The employer, not a court, determines what functions are essential, and [courts] will not second-guess that decision." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). "The term 'essential functions' does not include the marginal functions of the position." *Nicholas v. Acuity Lighting Group, Inc.*, No. 1:03CV1005, 2005 WL 280341, at *9 (S.D. Ind. 2005) (quoting 29 C.F.R. § 1630.2(n)). "While the amount of time spent performing a task is but one factor to consider, a duty is 'not essential if it [is] so small a part that it could be reassigned to other employees at negligible cost to the employer." *Shell v. Smith*, 789 F.3d 715, 719 (7th Cir. 2015) (quoting *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 962 (7th Cir. 2014)).

The Plaintiff asserts that with reasonable accommodation, he could still perform the trimmer position. The parties dispute which functions are essential to the trimmer position. Crossroads claims that the essential functions of the position include pushing and pulling for two hours every shift and lifting zero to five pounds for two hours every shift. The lifting requirements include lifting a nailer, a ladder or step stool, and bundles of trim. The nailers at issue weigh up to four pounds, the ladders and step stools weigh up to eight pounds, and the typical bundle of trim weighs up to ten pounds. The Plaintiff's permanent medical restrictions limit him to lifting two pounds with his right hand.

The Plaintiff argues that he would have been able to perform the trimmer job with reasonable accommodation. For example, he argues that he could have used his left hand to handle much of the pushing, pulling, and lifting requirements. He asserts that he could use his right hand to hold up a piece of trim, which weighed about 10 ounces, and use the nailer with his left hand. He argues that another member of his team could carry the ladders and step stools for him. Further, the amount of trim an employee carried at any given time was up to that employee, so the Plaintiff could simply make more trips with lighter loads.

However, the Plaintiff testified, under oath, that he could not perform this job in light of his permanent lifting restriction. When asked which jobs he thought he could perform, the Plaintiff did not mention the trimmer position and, more importantly, stated that with his restrictions, he could not use a nailer and "wouldn't be able to replace trim and stuff like that." (Sanford Dep. 113:19–114:4, ECF No. 31-1.) Undoubtedly, using a nailer and replacing trim are essential functions of the trimmer position. The Plaintiff cannot now contradict that testimony to withstand summary judgment.[2] A party cannot create an issue of fact on summary judgment by

---

[2] The Plaintiff argues that he did not admit he could not perform the trimmer position because the relevant questions during his deposition referred to whether he could perform his past job, which included other

6

submitting an affidavit that flatly contradicts prior sworn testimony. *See, e.g.*, *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995). In the instant case, the Plaintiff does not even offer an affidavit; he asserts these arguments in his summary judgment brief and offers no support for them whatsoever. Thus, as a matter of law, the Plaintiff cannot demonstrate that he is a qualified individual with a disability under the ADA for the trimmer position.

### 2. *Reasonable Accommodation*

The ADA defines "reasonable accommodation" as "job restructuring, part-time or modified work schedules, reassignment to a vacant position," and other types of accommodations not relevant here. *See Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (citing 42 U.S.C. § 12111(9)). The Plaintiff asserts that he could perform other existing positions even with his medical restrictions. Specifically, the Plaintiff claims that he would have been able to work as a puttier, inspector, reworker, cabinetmaker, forklift driver, or group leader. Thus, the Plaintiff argues, Crossroads could have reassigned him to a position he could perform, and because Crossroads failed to do so, it failed to reasonably accommodate him.

The duty to reassign is not without limits. *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998). For example, "an employer has no duty to 'bump' an incumbent from a position just to accommodate the request of a disabled employee." *Id.* And, "[n]othing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." *Id.* "An employer need not create a new job or strip a current job of its principal duties to accommodate a

---

responsibilities that he could not perform with his medical restrictions. Regardless of the context of the line of questioning the Plaintiff references, elsewhere in his deposition he specifically testified that he would be unable to use a nailer or replace trim.

disabled employee. Nor is there any duty to reassign an employee to a permanent light duty position." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Cirs.*, 601 F.3d 674, 680 (7th Cir. 2010).

The Plaintiff argues that, had Crossroads engaged in the requisite interactive process to explore possible accommodations, it could have identified vacancies in the positions he asserts he could perform. "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). The parties dispute whether Crossroads adequately initiated such an interactive process. There is no dispute that Crossroads regularly communicated with the Plaintiff while he was on leave. There also appears to be no dispute that Crossroads and the Plaintiff never discussed his possible return to work in an alternate position.

However, even if the Plaintiff proved that Crossroads failed to engage in the interactive process, that is not sufficient to recover under the ADA. He must also show that Crossroads' "failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation." *Rehling v. City of Chi.*, 207 F.3d 1009, 1016 (7th Cir. 2000)). "It is the plaintiff's burden to show that a vacant position exists for which he was qualified" *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (citing *Rehling*, 207 F.3d at 1015), and the Plaintiff has not come forward with any such evidence. The Plaintiff argues that it is reasonable to infer that a position that would reasonably accommodate the Plaintiff would have become available within a reasonable period of time. He bases this "reasonable inference" on the fact that turnover in the industry was between thirty and forty percent, production jobs were available in January 2014, and new employees were being hired weekly. However, this is only speculation.

"A party must present more than mere speculation or conjecture to defeat a summary judgment motion." *Liu v. T&H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) (citing *Sybron Transition Corp. v. Sec. Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997)). "Summary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chi.*, 863 F.3d 645 (7th Cir. 2017) (quoting *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016)).

Regardless, whether a position would have opened up in a reasonable amount of time is not the question. The question is whether there was available position *at the time* the Plaintiff was terminated. *See McCreary v. Libbey-Ownes-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) ("[The plaintiff] needed to show that a vacant position . . . was available at the time [the defendant] fired him."); *Mazzacone v. Tyson Fresh Meats, Inc.*, 195 F. Supp. 3d 1022, 1027 (N.D. Ind. 2016) (noting that "the Plaintiff must produce evidence that such positions were vacant at the pertinent time") (citing *Dalton*, 141 F.3d at 678); *see also Mullon v. Horseshoe Hammond, Inc.*, No. 2:01-CV-270, 2005 WL 2007154, at *4 (N.D. Ind. Aug. 18, 2005) (finding that the plaintiff failed to "establish that a full time position . . . was available at the time she became disabled"). The Plaintiff argues that Crossroads' "self-serving statement . . . that no production jobs were vacant at the time [the Plaintiff's] restrictions were placed cannot establish the lack of a reasonable accommodation as a matter of law." (Def. Resp. Br. 17, ECF No. 29.) This argument misses the mark. First, "self-serving statements" can be sufficient on summary judgment if they are supported by facts in the record and "meet[] the usual requirements for evidence on summary judgment." *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). Additionally, Crossroads does not need to establish that there were no vacancies at the time of the Plaintiff's termination; it is the Plaintiff's burden to prove that vacancies existed. *See*

*Ozlowski*, 237 F.3d at 840. And, the Plaintiff has not shown at the time of his termination that there were any vacancies in the positions that he asserts he could have performed. *See Novak v. Nicholson*, 231 F. App'x 489, 492 (7th Cir. 2007) ("Although [the plaintiff] pointed to several positions in which he was interested, he did not present any evidence that there were vacancies in those positions."). The Plaintiff also faults Crossroads for failing even to consider reassigning him to a vacant position. "[Crossroads'] failure to consider reassignment to a qualifying vacant position would tend to prove that [Crossroads] failed to reasonably accommodate [the Plaintiff's] disability *if* such a vacant position existed, but it does nothing to prove that one did." *Walter v. Wal-Mart Stores Inc.*, No. 4:09-CV-15, 2011 WL 4537931, at *12 (N.D. Ind. Sept. 28, 2011). Therefore, the Court will grant the Defendants' Motion for Summary Judgment on the Plaintiff's claim for failure to accommodate in violation of the ADA.

B. **Wrongful Discharge**

Under Indiana law, an employee has a cause of action against his employer if he is discharged in retaliation for exercising his statutorily-conferred right to seek worker's compensation benefits. *Frampton v. Cent. Ind. Gas. Co.*, 297 N.E.2d 425, 428 (Ind. 1973). "To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002). "The employee must present evidence that the employer's asserted lawful reason for discharge is a pretext." *Id.* That is, the Plaintiff must show "'rapidity and proximity in time' between the employee's filing for benefits and the discharge . . . or . . . evidence that the employer's proffered reason for the discharge is 'patently inconsistent with the evidence before the Court.'" *Mack v. Great Dane Trailers*, 308 F.3d 776,

10

784 (7th Cir. 2002) (quoting *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999)).

## 1. *Rapidity and Proximity in Time*

The Plaintiff filed his worker's compensation occupational injury report and claim on October 3, 2013, and he was terminated over a year later in January of 2015. Courts "uniformly hold that the temporal proximity must be very close." *Tungjunyatham v. Johanns*, No. 1:06-cv-1764, 2009 WL 3823920, at *17 (E.D. Cal. 2009) (noting that "[i]t has been held that . . . less than three months is sufficiently close," but "longer periods are too attenuated to support the inference"). In fact, a year-long lapse "tends to negate, rather than support, an inference of causation." *Mack*, 308 F.3d at 784 (citing *Goetze v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir. 2002) (applying Indiana law)). The Plaintiff argues that he has shown a close temporal proximity because he was terminated on the day his worker's compensation claim closed. The Seventh Circuit rejected a similar argument in *Mack*. In *Mack*, the plaintiff "attempt[ed] to shorten the relevant time lapse by asserting that he 'was fired on the very day his employer discovered the fact that [the plaintiff] was going to end his worker's compensation claim'—that is, when [the defendant] received [the physician's] report suggesting that [the plaintiff's] injury would not likely improve and that his work limitations would be permanent . . . ." *Id.* The *filing* of a worker's compensation claim, not its closure, determines temporal proximity under Indiana law. In this case, more than a year passed between such a filing and the Plaintiff's termination. Therefore, the Plaintiff cannot establish temporal proximity.

*2.     Consistency with the Evidence*

The Plaintiff may establish pretext through another avenue under Indiana law. To show pretext, the Plaintiff may also show that Crossroads' proffered reason for his termination is patently inconsistent with the evidence before the Court. Crossroads has offered a nondiscriminatory reason for its adverse action, namely that the Plaintiff could not perform the essential functions of the trimmer position or of any other then-vacant position for which the Plaintiff was qualified. Crossroads received numerous reports over the course of the Plaintiff's leave that the Plaintiff could not return to work in any capacity and may not have been able to return to work for one to three years. When the Plaintiff's worker's compensation claim was finally closed, the Plaintiff had a permanent restriction that Crossroads believed precluded the Plaintiff from returning to his position as a trimmer, and Crossroads testified that there were no vacant positions available that it believed the Plaintiff could perform with that permanent restriction. The plant manager testified that at the time of the Plaintiff's termination, he was under the impression that the Plaintiff was unable to use his right arm or hand at all.

The burden is therefore on the Plaintiff to produce evidence that this reason is merely pretextual and that a discriminatory motive was the determining factor. The Plaintiff's opinion with respect to his ability to perform the essential function of any position, even if true in all respects, is insufficient to establish pretext because whether Crossroads' decision was objective, wise, fair, or even correct is not relevant. *See Powdertech*, 776 N.E.2d at 1260 ("[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions."); *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 561 (7th Cir. 2011) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered."); *Harley v. Wis. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997)

("Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless.").

The Plaintiff has not come forward with evidence that demonstrates that Crossroads did not honestly believe these reasons warranted the Plaintiff's termination. As noted above, the Plaintiff admitted he could not perform the essential functions of the trimmer position. Further, the Plaintiff is unable to meet his burden to show that at the time of his termination, there were vacant positions for which he was qualified and for which he could perform the essential functions.

Courts do "not sit as a super-personnel department that reexamines an entity's business decision." *Powdertech*, 776 N.E.2d at 1260. "Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* (internal quotation omitted). That Crossroads decided to terminate the Plaintiff after the determination that he had reached maximum medical improvement is not "patently inconsistent with the evidence before the Court," and the Plaintiff has not produced evidence to the contrary. *See Mack*, 308 F.3d at 784 (quoting *Markley Enter.*, 716 N.E.2d at 565). Therefore, the Court will grant summary judgment as to the Plaintiff's wrongful termination claim.

C.     **Retaliation Claims**

The Plaintiff alleges that Crossroads retaliated against him in violation of both the ADA and Title VII. Retaliation claims under the ADA and Title VII are analyzed under the same standard. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2016). The standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse

employment action." *Ortiz v. Werner Enter.*, 834 F.3d 760, 765 (7th Cir. 2016). A prima facie case of retaliation under the ADA or Title VII requires the Plaintiff to show that: (1) he was engaged in activity protected by the ADA or Title VII; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action.[3] *See Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001).

## 1. *Retaliation Under Title VII*

Title VII protects an employee from discrimination when "he has opposed any practice made an unlawful employment practice by this subchapter . . . . " 42 U.S.C. § 2000(e)-3(a). The Plaintiff argues that he had a "reasonable belief that the Defendants' conduct constituted an unlawful employment practice and that voicing a complaint about such a practice invoked the protection of Section 2000(e)-3(a) (1982) of Title VII of the Civil Rights Act of 1964, as amended." (Compl. ¶ 74.) The alleged unlawful conduct the Plaintiff references is the failure to change working conditions and provide the Plaintiff with proper FMLA forms and disability applications. (*Id.* at ¶ 75.) The Plaintiff asserts that, in retaliation, the Defendants falsified documents, violated his work restrictions, and eventually terminated him. (*Id.* at ¶¶ 73, 76.)

The Court first examines whether the Plaintiff engaged in activity protected by Title VII when he complained about the violation of his work restrictions and failure to receive FMLA forms. The Plaintiff's expressed concerns centered around his disability and violation of his work

---

[3] This is known as the "direct" method of proof. A plaintiff may also show retaliation using the "indirect" method of proof, which requires a plaintiff asserting a retaliation claim to demonstrate that (1) he "engaged in statutorily protected activity"; (2) he "was performing his job satisfactorily" and (3) he "was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson v. Bd. of Trs. Of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601–02 (7th Cir. 2011). However, neither party has argued the indirect method, so the Court will not address it.

restrictions. However, Title VII does not protect against discrimination based on disability. Thus, the Plaintiff has no recourse under Title VII.

## 2. *Retaliation Under the ADA*

The Plaintiff has satisfied the first prong of the retaliation framework under the ADA. "The ADA prohibits a person from discriminating against any individual because such individual has 'opposed any act or practice made unlawful by [the ADA].'" *Albiero v. Town of Goodland*, No. 4:11-CV-45, 2012 WL 523714, at *6 (N.D. Ind. Feb. 16, 2012) (quoting 42 U.S.C. § 12203(a)). Requests for accommodation are protected activity under the ADA. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–815 (7th Cir. 2015) (citing *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008)). Therefore, drawing all inferences in favor of the Plaintiff, his voiced complaints regarding his ability to do the tasks assigned to him with his medical restrictions were protected activity.

The Court next addresses whether the Plaintiff suffered an adverse employment action. The Plaintiff appears to argue that he suffered multiple adverse employment actions, including being subjected to derogatory and offensive conduct, ridiculed, and eventually terminated. "A cognizable adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)). The Plaintiff was terminated from his position, which is an adverse employment action within the meaning of the ADA.

However, the Court's analysis does not end there. The Plaintiff must also show a causal connection between his protected activity and his termination. "A plaintiff demonstrates a causal connection by showing that the defendant 'would not have taken the adverse . . . action but for [his] protected activity.'" *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting *Greengrass v. Int'l Monetary Sys Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). As discussed above, the length of time that passed between the alleged protected activity and the adverse action— over a year—does not tend to show causality; Crossroads has offered a legitimate, non-discriminatory reason for the Plaintiff's termination, namely that he could no longer perform the essential functions of the trimmer position; and the Plaintiff has not come forward with any evidence suggesting that Crossroads' reason is pretextual.

Therefore, the Court will grant summary judgment as to the Plaintiff's retaliation claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion for Summary Judgment [ECF No.25]. The Clerk of Court is DIRECTED to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on February 9, 2018.

       s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT